THE GRAHAM COUNTY BOARD OF ELECTIONS, Plaintiff v. GRAHAM COUNTY BOARD OF COMMISSIONERS; STEVE ODOM, BILLY CABLE, BRUCE SNYDER, SANDRA SMITH, GENE TRULL, in their official capacities as Graham County Commissioners; ANGELA ORR, Defendants

No. COA10-653

(Filed 7 June 2011)

## 1. Appeal and Error— mootness—satisfaction of judgment

Defendant Board of Commissioners' appeal was not moot even though it had already paid employment compensation and attorney fees in compliance with a writ of *mandamus*. Payment was not made by way of compromise, nor did the payment suggest that defendants did not intend to appeal.

## 2. Jurisdiction— subject matter jurisdiction—county boards of elections—issuance of writ of mandamus

The trial court had subject matter jurisdiction in a case seeking a writ of *mandamus* that would require the Board of Commissioners to pay an employee of the Graham County Board of Elections. County boards of elections have the power to sue and be sued, and they are distinct legal entities from the counties in which they are located.

## 3. Mandamus— payment of employee—Board of Elections— waiver of sovereign immunity

The trial court did not err by issuing a writ of *mandamus* that required the Board of Commissioners to pay an employee of the Graham County Board of Elections. This duty was purely ministerial and there was no discretion involved. Further, the Board of Commissioners waived any potential sovereign immunity protection by failing to assert it at trial.

**4. Attorney Fees— payment from county's general fund—no statutory authorization**

The trial court erred by ordering defendant Board of Commissioners to pay the Graham County Board of Elections' legal expenses from the general fund of Graham County and not the amount already budgeted for the Graham County Board of Elections. There was no statutory authorization for attorney fees, and thus, this portion of the order was reversed.

Appeal by Graham County Board of Commissioners and Steve Odom, Billy Cable, Bruce Snyder, Sandra Smith, and Gene Trull, in their official capacities as Graham County Commissioners, from order entered 14 December 2009 by Judge James L. Baker in Graham County Superior Court. Heard in the Court of Appeals 1 December 2010.

*David A. Sawyer for Defendants-appellants.*

*McKinney and Tallant, P.A., by Zeyland G. McKinney, Jr., and Stiles, Krake & Smith, P.C., by Stephen S. Krake and Eric W. Stiles, for Plaintiff-appellee.*

*Stark Law Group, PLLC, by S.C. Kitchen, and James B. Blackburn, III, for North Carolina Association of County Commissioners, amicus curiae.*

HUNTER, JR., Robert N., Judge.

The Graham County Board of Commissioners and its members (collectively, the "Board of Commissioners") appeal the issuance of a writ of mandamus requiring the Board of Commissioners to pay an employee of the Graham County Board of Elections (the "GCBOE"). The Board of Commissioners also appeals an award of attorney's fees to the GCBOE. For the following reasons, we affirm the issuance of the writ of mandamus and reverse the award of attorney's fees.

## I. Factual and Procedural Background

A county board of commissioners is responsible for funding the local county board of elections. In Graham County, the Board of Commissioners issues paychecks directly to GCBOE employees. At a September 2009 meeting, the Board of Commissioners voted to eliminate one of the GCBOE's two full-time employee positions from the budget. It determined the GCBOE should operate with one full-time employee (the director of elections) and one part-time employee. Despite the amended budget, the GCBOE eventually hired two part-time employees, one of whom was Angela Orr. The Graham County

finance officer informed the director of elections that the GCBOE could hire only one part-time employee. Subsequently, the Board of Commissioners refused to pay Ms. Orr for her work with the GCBOE. Budget projections indicate there were sufficient funds in the GCBOE's budget to pay both part-time employees for the remainder of the budget year.

The GCBOE filed a petition for a writ of mandamus seeking to compel the Board of Commissioners to pay Ms. Orr her salary and for any benefits owed to her as a result of her employment. The Graham County Superior Court issued the writ and ordered the Board of Commissioners to pay $5035.50 in attorney's fees.

The Board of Commissioners promptly remitted payment to Ms. Orr and counsel for the GCBOE. After issuing payment, the Board of Commissioners gave timely notice of appeal. The GCBOE filed a motion to dismiss the appeal as moot, which the trial court denied.

## II. Analysis

### A. Mootness

[1] At the outset, this appeal presents a question of mootness because the Board of Commissioners immediately paid Ms. Orr in compliance with the writ of mandamus. In North Carolina,

> the exclusion of moot questions from determination is not based on a lack of jurisdiction but rather represents a form of judicial restraint.
>
> Whenever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law.
>
> Unlike the question of jurisdiction, the issue of mootness is not determined solely by examining facts in existence at the commencement of the action. If the issues before a court or administrative body become moot at any time during the course of the proceedings, the usual response should be to dismiss the action.

*In re Peoples*, 296 N.C. 109, 147–48, 250 S.E.2d 890, 912 (1978) (citations omitted).

When a party satisfies a judgment and then appeals the ruling giving rise to that judgment, it appears the question of mootness is

largely an issue of waiver. *See People Unlimited Consulting, Inc. v. B & A Indus., LLC.*, No. COA02-815, 2003 WL 21498768, at *7 (N.C. Ct. App. July 1, 2003) (unpublished) (holding that the involuntary satisfaction of a judgment did not render moot a party's cross-appeal). "North Carolina follows the rule that the waiver of the right to appeal, like most waivers, must be voluntary and intentional." *Redevelopment Comm'n of Winston-Salem v. Weatherman*, 23 N.C. App. 136, 140, 208 S.E.2d 412, 415 (1974) (citing *Luther v. Luther*, 234 N.C. 429, 67 S.E.2d 345 (1951); *Bank v. Miller*, 184 N.C. 593, 115 S.E. 161 (1922)).

> Voluntary payment or performance of a judgment is generally held to be no bar to an appeal, or writ of error for its reversal, unless such payment was made by way of compromise and agreement to settle the controversy, or unless the payment or performance of the judgment was under peculiar circumstances which amounted to a confession of its correctness.

*Id.* (quoting *Miller*, 184 N.C. at 597, 115 S.E.2d at 163) (internal quotation marks omitted).

In *Weatherman*, the appellant argued it was error for the trial court to tax expert-witness costs. *Id.* at 139, 208 S.E.2d at 414. The appellant paid the judgment to the clerk of court and appealed. *See id.* at 140, 208 S.E.2d at 415. The appellant failed to obtain an extension of time to docket his case on appeal and was forced to obtain appellate review through a writ of certiorari. *Id.* at 140, 208 S.E.2d at 415–16. The appellee argued the payment of fees in combination with the deficiencies in the appellant's appeal amounted to a waiver and abandonment of the appellant's right to appeal this issue. *Id.* at 140, 208 S.E.2d at 415. In holding the appellant did not waive its right to appeal, the Court explained that the appellant

> never, by his actions, confessed the correctness of the order allowing the witness fees. Instead, he was appealing directly to this Court, and the respondents were aware of this. The petition for writ of certiorari was not so unreasonably delayed as to indicate an intentional abandonment of his appeal. In fact, it was filed soon after the original ninety day period for docketing in this Court had expired.

*Id.*

The appellee has the burden of demonstrating abandonment or waiver, *id.* at 141, 208 S.E.2d at 415, and the GCBOE has failed to carry

this burden in this appeal. Our review of the record does not indicate payment was made by way of compromise or that the payment would suggest to the GCBOE (or other parties) that the Board of Commissioners did not intend to appeal. This case involves a matter of significant public concern—namely, the division of power between boards of county commissioners and county boards of elections—which further counsels us not to abstain from review. *Cf. Beronio v. Pension Comm'n of City of Hoboken*, 33 A.2d 855, 858 (N.J. 1943) (indicating the importance of a legal question counseled in favor of not concluding the case was moot); *In re Peoples*, 296 N.C. at 147, 250 S.E.2d at 912 (explaining that, in North Carolina, the mootness doctrine is "a form of judicial restraint," not a matter of jurisdiction). We hold the Board of Commissioners' appeal is not moot.

## B.  The Allocation of Power to and Between Counties, Local Boards of Elections, and the State Board of Elections

[2] The Board of Commissioners argues our courts lack jurisdiction to hear this case. Several of the Board of Commissioners' jurisdictional arguments hinge on whether the GCBOE is a separate legal entity from Graham County and whether the GCBOE is vested with the power to "sue and be sued." These jurisdictional issues, as well the substantive issues related to the writ of mandamus, are best understood after reviewing the constitutional and statutory relationship between the state, county boards of commissioners, county boards of elections, and State Board of Elections.

All North Carolina government entities are subunits of the state government. "[C]ounties are both state agencies and local governments . . . ." A. Fleming Bell, II, *An Overview of Local Government*, at 3, *in County and Municipal Government in North Carolina* (David M. Lawrence ed., 2007), *available at* http://www.sogpubs.unc.edu/cmg/cmg01.pdf. "In North Carolina, local governments are creatures of legislative benevolence—not constitutional mandate." C. Tyler Mulligan, *Toward a Comprehensive Program for Regulating Vacant or Abandoned Dwellings in North Carolina: The General Police Power, Minimum Housing Standards, and Vacant Property Registration*, 32 Campbell L. Rev. 1, 12 (2009). The North Carolina Constitution provides that the "General Assembly . . . may give such powers and duties to counties, cities and towns, and other governmental subdivisions as it may deem advisable." N.C. Const. art. VII, § 1. Thus, counties and "other governmental subdivisions," such as the GCBOE, depend on the General Assembly for their legal existence and powers. The General Assembly has the constitutional authority to structure the legal relationships between those entities.

Chapter 153A provides for the counties' powers and governance structure. *See, e.g.,* N.C. Gen. Stat. § 153A-10 (2009) (providing that "North Carolina has 100 counties" and naming them). "The inhabitants of each county are a body politic and corporate" with the power to, among other things, "sue and be sued." N.C. Gen. Stat. § 153A-11 (2009). Counties also "have and may exercise in conformity with the laws of this State county powers, rights, duties, functions, privileges, and immunities of every name and nature." *Id.* The county board of commissioners exercises these powers. N.C. Gen. Stat. § 153A-12 (2009).

Chapter 163, Article 4 establishes the state and county boards of elections. Section 163-30 states that, "[i]n every county of the State[,] there shall be a county board of elections, to consist of three persons." N.C. Gen. Stat. § 163-30 (2009). The State Board of Elections appoints and may remove the members of the county boards of elections. *See id.* (addressing appointment); N.C. Gen. Stat. § 163-22(c) (2009) (addressing appointment and removal). County boards of elections have the power to "exercise all powers granted to such boards in . . . Chapter [163]." N.C. Gen. Stat. § 163-33 (2009). Section 163-33 provides numerous specific duties and powers related to administering elections, hiring employees, and investigating election law violations. *See id.* In addition to the duties set forth in section 163-33, county boards of elections must "perform such other duties as may be prescribed by . . . Chapter [163], by directives promulgated pursuant to [section] 163-132.4, or by the rules, orders, and directives of the State Board of Elections." *Id.* The executive director of the State Board of Elections is authorized to promulgate directives concerning the duties of the county boards of elections. N.C. Gen. Stat. § 163-132.4 (2009).

Section 163-33 does not explicitly state county boards of elections have the power to "sue and be sued" or that they are bodies politic and corporate. However, section 163-25 explicitly authorizes the State Board of Elections to "assist any county or municipal board of elections in any matter in which litigation is contemplated or *has been initiated.*" N.C. Gen. Stat. § 163-25 (2009) (emphasis added). Section 163-25 also states that "[t]he Attorney General shall provide the State Board of Elections with legal assistance in execution of its authority under this section or, in his discretion, recommend that private counsel be employed." *Id.*

County boards of elections have the power "[t]o appoint and remove the board's clerk, assistant clerks, and other employees." N.C. Gen. Stat. § 163-33(10). Each county board of elections selects a

director of elections who is then appointed by the State Board of Elections. *See* N.C. Gen. Stat. § 163-35(b) (2009) (stating that the executive director of the State Board of Elections must appoint as director of elections the individual nominated by majority vote of a county board). The State Board of Elections has the authority to terminate a local director of elections. *See id.* While a county director of elections is appointed and terminated by the State Board of Elections, he is a "county employee." *See* N.C. Gen. Stat. § 163-32(c) (2009) (describing the director of elections as a "county employee").

Although the county boards of elections are largely under the control of the State Board of Elections, they are funded by the counties: "The respective boards of county commissioners shall appropriate reasonable and adequate funds necessary for the legal functions of the county board of elections, including reasonable and just compensation of the director of elections." N.C. Gen. Stat. § 163-37 (2009). Section 163-32 provides that, "[i]n all counties[,] the board of elections shall pay its clerk, assistant clerks, and other employees such compensation as it shall fix within budget appropriations." N.C. Gen. Stat. § 163-32 (2009). However, section 153A-92 states, "[T]he board of commissioners shall fix or approve the schedule of pay, expense allowances, and other compensation of all county officers and employees, whether elected or appointed, and may adopt position classification plans." N.C. Gen. Stat. § 153A-92 (2009). Counties are required to pay members of the local board of elections $25 per meeting and reimburse certain expenses. N.C. Gen. Stat. § 163-32 (2009). The local board of county commissioners "may pay the chairman and members of the county board of elections compensation in addition to the per meeting and expense allowance." *Id.*

In sum, the county boards of elections and county commissioners enjoy—or in this case, do not enjoy—a reciprocal, interwoven relationship.

## C.  The GCBOE's Standing, Legal Existence, and Power to Sue

The Board of Commissioners offers several reasons why our courts lack subject matter jurisdiction over this case. While these arguments were not presented in the trial court below, a defect in subject matter jurisdiction may be asserted for the first time on appeal. *In re Green*, 67 N.C. App. 501, 504, 313 S.E.2d 193, 195 (1984).

The Board of Commissioners presents three closely-related arguments: (1) our courts lack subject matter jurisdiction because the GCBOE is not a "legal entity"; (2) because the GCBOE is not a legal

entity, it lacks standing; and (3) the GCBOE cannot bring suit because the General Assembly has not explicitly vested it with the power to sue and be sued.

"Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter." *Beachcomber Props., L.L.C. v. Station One, Inc.*, 169 N.C. App. 820, 823, 611 S.E.2d 191, 193 (2005) (quoting *Street v. Smart Corp.*, 157 N.C. App. 303, 305, 578 S.E.2d 695, 698 (2003)). If a party cannot maintain an action in its own capacity, it lacks standing. *See Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 337, 525 S.E.2d 441, 445 (2000) (stating that a plaintiff lacked standing because it could not "maintain an action in its own capacity"). Thus, if an entity does not have the power to bring suit, it also lacks standing to bring suit. Consequently, the dispositive issue with respect to standing, as far as the County Board of Commissioners is concerned, is whether the GCBOE is an independent legal entity with the ability to sue or whether it is merely an integrated subcomponent of Graham County. *Cf. Coleman v. Cooper*, 89 N.C. App. 188, 192, 366 S.E.2d 2, 5 (1988) (holding the Raleigh Police Department cannot be sued because it is a subcomponent of the City of Raleigh and there is not a statute authorizing suit against the police department), *overruled in part on other grounds by Meyer v. Walls*, 347 N.C. 97, 489 S.E.2d 880 (1997).

"In this state, a legal proceeding must be prosecuted by a legal person, whether it be a natural person, *sui juris*, or a group of individuals or other entity having the capacity to sue and be sued, such as a corporation, partnership, unincorporated association, or governmental body or agency." *In re Coleman*, 11 N.C. App. 124, 127, 180 S.E.2d 439, 442 (1971). The above discussion in Section II.A reveals that county boards of elections, as creatures of statute, possess only the powers bestowed upon them by the General Assembly. It follows that they can sue only if the legislature authorizes them to do so.

The appellate division and the General Statutes frequently employ the language "sue and be sued" to refer to an entity's ability to bring an action in court or have an action brought against it. *E.g.*, N.C. Gen. Stat. § 153A-11; *Tucker v. Eatough*, 186 N.C. 505, 507, 120 S.E. 57, 59 (1923). The General Statutes do not state explicitly that a county board of elections has the power to "sue and be sued." But section 163-25 explicitly authorizes the State Board of Elections to "assist any county or municipal board of elections in any matter in which litigation is contemplated or *has been initiated*." N.C. Gen.

Stat. § 163-25 (emphasis added). If the State Board of Elections can assist a county board in ongoing litigation, county boards of elections must have the ability to sue and be sued. Otherwise, they would not require the assistance of the State Board of Elections with respect to litigation that "*has been initiated.*"

In order to establish the GCBOE does not have the power to sue and be sued, the Board of Commissioners calls our attention to the word "expressly" in the following passage by our Supreme Court:

> Even a state department, like the insane asylum; or the board of education; or the state prison—is so essentially a part of the state, notwithstanding these departments are created by statute, that they have no power to sue and have immunity from liability to suit, except when the statute creating them expressly grants permission that they may "sue and be sued."

*Nelson v. Atl. Coast Line R. Co. Relief Dept.*, 147 N.C. 103, 104, 60 S.E. 724, 724 (1908) (citations omitted). This language is clearly dicta. *Nelson* dealt with whether an unincorporated division of a railroad company could be sued. *Id.* The purpose of this expansive language was to point out that, if a state department could only be sued with the state's statutory consent, a non-governmental entity also required statutory "permission" to be sued. We do not believe the words "sue and be sued" have any talismanic qualities. Rather, we must ascertain based on the statutory language and framework whether the General Assembly intended to allow a government entity to bring suit or be sued in court.

The relationship established between the State Board of Elections, county boards of elections, and counties suggests county boards of elections are not integrated subcomponents of the counties. The members of the county boards of election are appointed and can be removed by the State Board of Elections. N.C. Gen. Stat. § 163-30 (addressing appointment); N.C. Gen. Stat. § 163-22(c) (addressing removal); *see also supra* Section II.A. And the county boards of elections are required to comply with directives from the State Board of Elections. N.C. Gen. Stat. § 163-33. It is true, as the Board of Commissioners points out, that the county boards of elections are dependent on the counties for their funding. *Supra* Section II.A (discussing various statutes related to funding and compensation). However, we believe the State Board of Elections' dominion over the local boards' conduct weighs more heavily than their reliance on the counties for funding. Finally, we note that our

Supreme Court and this Court have heard numerous cases in which a county board of elections has been a party to the litigation. *E.g., Democratic Party of Guilford Cnty. v. Guilford Cnty. Bd. of Elections*, 342 N.C. 856, 467 S.E.2d 681 (1996); *Revels v. Robeson Cnty. Bd. of Elections*, 167 N.C. App. 358, 605 S.E.2d 219 (2004).

We hold that county boards of elections have the power to sue and be sued and that they are distinct legal entities from the counties in which they are located. We also hold the GCBOE has standing.[1]

## D.  The Issuance of the Writ

[3]  We now turn to whether the trial court correctly issued the writ of mandamus. A writ of mandamus is an extraordinary court order to "a board, corporation, inferior court, officer or person commanding the performance of a specified official duty imposed by law." *Sutton v. Figgatt*, 280 N.C. 89, 93, 185 S.E.2d 97, 99 (1971). We review legal questions *de novo. E.g., Staton v. Brame*, 136 N.C. App. 170, 174, 523 S.E.2d 424, 427 (1999). The trial court's unchallenged findings of fact are binding on appeal. *Peters v. Pennington*, No. COA10-91, slip op. at 14–15, —— N.C. App. ——, ——, —— S.E.2d ——, —— (March 1, 2011).

> Mandamus lies when the following elements are present: First, the party seeking relief must demonstrate a clear legal right to the act requested. Second, the defendant must have a legal duty to perform the act requested. Moreover, the duty must be clear and not reasonably debatable. Third, performance of the duty-bound act must be ministerial in nature and not involve the exercise of discretion. Nevertheless, a court may issue a writ of mandamus to a public official compelling the official to make a discretionary decision, as long as the court does not require a particular result. Fourth, the defendant must have "neglected or refused to perform" the act requested, and the time for performance of the act must have expired. Mandamus may not be used to reprimand an official, to redress a past wrong, or to prevent a future legal injury. Finally, the court may only issue a writ of mandamus in the absence of an alternative, legally adequate remedy. When appeal is the proper remedy, mandamus does not lie.

*In re T.H.T.*, 362 N.C. 446, 453–54, 665 S.E.2d 54, 59 (2008) (citations omitted).

---

1. The Board of Commissioners does not challenge the GCBOE's standing on any other grounds. Our review indicates there is no defect in standing that has not been asserted by the Board of Commissioners on appeal.

The Board of Commissioners argues (1) that it—and not the GCBOE—is responsible for determining the number of GCBOE employees and (2) that the Board of Commissioners' duty to do so is discretionary—not ministerial—in nature. The Board of Commissioners also contends that, assuming *arguendo* it is duty-bound to pay GCBOE employees if payment can be made without exceeding the GCBOE's budget, mandamus cannot lie because this duty is not sufficiently "clear" based on the applicable statutory framework.

At first glance, section 153A-92, which states that boards of county commissioners shall "fix or approve the schedule of pay" for all county employees, indicates the Board of Commissioners has the discretion to determine the number and pay of all GCBOE employees. N.C. Gen. Stat. § 153A-92. Although no statute states that county boards of elections employees other than the director of elections are "county employees," if the director of elections is a county employee, it follows that all other county board of elections employees are county employees as well. *See* N.C. Gen. Stat. § 163-35(c) (describing the director of elections as a "county employee"). However, section 163-32 states that the county boards of elections shall pay their employees "such compensation as it shall fix within budget appropriations." N.C. Gen. Stat. § 163-32. And subsection 163-33(10) gives county boards of elections the power to "appoint and remove the board's clerk, assistant clerks, and other employees." N.C. Gen. Stat. § 163-33(10). These statutes all address the same subject matter, but sections 163-32 and -33 do so more specifically; therefore, they control. *See Fowler v. Valencourt*, 334 N.C. 345, 349, 435 S.E.2d 530, 532 (1993) ("[W]here two statutes deal with the same subject matter, the more specific statute will prevail over the more general one.").

We conclude that, so long as a county board of elections remains within the budget allocated by the local board of county commissioners, the county board of elections has the sole authority to hire and fire elections employees.[2] This authority provides the clear legal right required for mandamus. Here, it is uncontested that there were sufficient funds in the budget to pay Ms. Orr. Consequently, the Board of Commissioners was duty-bound to disburse funds to pay Ms. Orr. This duty is purely ministerial—there is no discretion involved.

---

2. County boards of commissioners are, of course, free to fix the overall budget for the county board of elections as long as that budget provides "reasonable and adequate funds necessary for the legal functions of the county board of elections." N.C. Gen. Stat. § 163-37.

The Board of Commissioners also contends separation of powers principles deprive our courts of subject matter jurisdiction. However, as the above discussion illustrates, compelling the Board of Commissioners to disburse payment to GCBOE employees does not impinge upon a political decision-making process committed to county boards of commissioners by the North Carolina Constitution. Rather, the General Assembly has created a statutory framework under which county boards of commissioners have no authority to determine the number of county board of elections employees if those employees can be compensated within the budget established by the county commissioners.

The Board of Commissioners next argues it is entitled to sovereign immunity, and therefore, mandamus cannot lie. "[A] motion to dismiss based on sovereign immunity presents a question of personal jurisdiction rather than subject matter jurisdiction . . . ." *Data Gen. Corp. v. Cnty. of Durham*, 143 N.C. App. 97, 100, 545 S.E.2d 243, 246 (2001). Sovereign immunity is an affirmative defense. *Herring v. Winston-Salem/Forsyth Cnty. Bd. of Educ.*, 188 N.C. App. 441, 446, 656 S.E.2d 307, 311 (2008). If a party fails to assert personal jurisdiction as a defense, the defense is waived. *In re J.T.*, 363 N.C. 1, 4, 672 S.E.2d 17, 18 (2009). Our review indicates sovereign immunity was never asserted in the trial court below; therefore, the Board of Commissioners waived any potential sovereign immunity protection and cannot assert the doctrine on appeal. *Cf.* Jonathan R. Siegel, *Waivers of State Sovereign Immunity and the Ideology of the Eleventh Amendment*, 52 Duke L.J. 1167, 1227 (2003) (discussing the potential for states to litigate cases on the merits in federal court and then assert sovereign immunity on appeal and demonstrating that "[s]uch tactics are unfair and unworthy of sovereign dignity").

The Board of Commissioners argues the proceedings below violated the Law of the Land Clause of the North Carolina Constitution, which states that "[n]o person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. We decline to address this argument because it was not presented to the trial court below. *See State v. Creason*, 313 N.C. 122, 127, 326 S.E.2d 24, 27 (1985) (stating this Court is not "required to pass upon a constitutional issue unless it affirmatively appears that the issue was raised and determined in the trial court").

GRAHAM CNTY. BD. OF ELECTIONS v. GRAHAM CNTY. BD. OF COMM'RS

[212 N.C. App. 313 (2011)]

We also reject the Board of Commissioners' argument that mandamus is precluded because there is an alternative remedy in the form of an action for wages by Ms. Orr. The GCBOE has an interest in ensuring prompt compliance with the General Statutes independent of Ms. Orr's interest. The interference with the GCBOE's internal management hinders its ability to administer elections, and the GCBOE must be able to remedy this promptly without relying on another litigant.

We hold that our courts have subject matter jurisdiction over this lawsuit and that the trial court correctly issued the writ of mandamus.

## E. Attorney's Fees

**[4]** The trial court ordered the Board of Commissioners to pay the GCBOE's legal expenses in connection with this matter from the general fund of Graham County and not the amount already budgeted for the GCBOE. "[T]he general rule in North Carolina is that a party may not recover its attorney's fees unless authorized by statute." *Martin Architectural Prods., Inc. v. Meridian Const. Co.*, 155 N.C. App. 176, 181, 574 S.E.2d 189, 192 (2002). Our research has discovered no statutory authorization for attorney's fees in this case. Therefore, the portion of the trial court's order awarding attorney's fees is reversed.

## III. Conclusion

Affirmed in part and reversed in part.

Judges STEELMAN and STEPHENS concur.