IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-217

No. COA21-229

Filed 5 April 2022

Iredell County, No. 19 CVS 280

TAC STAFFORD, LLC, a North Carolina Limited Liability Company, Plaintiff,

v.

TOWN OF MOORESVILLE, a North Carolina body politic and corporate, Defendant.

Appeal by defendant from orders entered 10 August 2020 and 23 February 2021 by Judge Martin B. McGee in Iredell County Superior Court. Cross-appeal by plaintiff from order entered 23 February 2021 by Judge Martin B. McGee in Iredell County Superior Court. Heard in the Court of Appeals 14 December 2021.

*Scarbrough, Scarbrough & Trilling, PLLC, by Madeline J. Trilling and James E. Scarbrough, for plaintiff-appellee/cross-appellant.*

*Cranfill Sumner LLP, by Steven A. Bader and Patrick H. Flanagan, for defendant-appellant/cross-appellee.*

ZACHARY, Judge.

¶ 1        Defendant Town of Mooresville ("the Town") appeals from the trial court's 10 August 2020 order granting Plaintiff TAC Stafford, LLC's motion for summary judgment, denying the Town's motion for summary judgment, and issuing a writ of mandamus "requiring [the Town] to take all necessary steps to authorize the issuance of development approvals for the Stafford Subdivision without regard to construction

of the [o]ff-[s]ite [i]mprovements[.]" The Town also appeals from the trial court's 23 February 2021 order granting in part Plaintiff's motion for reimbursement of fees and denying the Town's motion to stay. Lastly, Plaintiff cross-appeals from the trial court's 23 February 2021 order denying in part its motion for reimbursement of expenditures and recovery of attorneys' fees and costs.

After careful review, we affirm the 10 August 2020 order. As for the 23 February 2021 order, we affirm in part, reverse in part, and remand to the trial court.

## *Background*

In 2014, Plaintiff purchased the Stafford Subdivision property (the "Subdivision"), which was zoned R-3 (Single Family Residential-3), allowing for development by right of three residential units per acre. Plaintiff submitted concept plans for the Subdivision to the Town, and on 21 January 2015, the Town informed Plaintiff via a series of emails first that the concept plans were approved, then that the approval was subject to the completion of a traffic impact analysis ("TIA") and the notation on the plan of "any required on-site and off-site improvements[.]"

Pursuant to a preexisting agreement, the Town selected Ramey Kemp & Associates, Inc. ("Ramey Kemp") to prepare the TIA, an expense for which Plaintiff was required to reimburse the Town. On 13 August 2015, Ramey Kemp completed and sealed the TIA. Still seeking the development approvals, Plaintiff entered into a Mitigation Measures Agreement ("MMA") with the Town on 4 November 2015. The

MMA obligated Plaintiff to implement certain mitigation measures, including various improvements to off-site public transportation locations (the "off-site improvements") up to 2.3 miles away from the Subdivision, "as a condition of development." The MMA also conditioned the issuance of certificates of occupancy ("COs") for certain units of the Subdivision on completion of the off-site improvements.

¶ 5     Following minor changes to the Subdivision concept plan, on 6 March 2017, the parties executed an amended MMA. In its attempt to complete its obligations under the MMA, Plaintiff spent a total of $993,584.00. However, Plaintiff was ultimately unable to purchase rights-of-way from the owners of various properties necessary to complete the off-site improvements. Plaintiff requested that the Town condemn the properties, pursuant to the Town's preexisting policy concerning the private acquisition of property to facilitate transportation mitigation measures, but the Town rejected Plaintiff's request during three meetings between December 2017 and October 2018 at which Plaintiff was not present. The Town then refused to issue the remaining COs for more than half of the Subdivision, on the ground that Plaintiff had breached the MMA by failing to complete the required off-site improvements.

¶ 6     On 30 January 2019, Plaintiff filed a complaint against the Town asserting multiple claims for declaratory and injunctive relief arising from its obligations to make the off-site improvements in accordance with the MMA, as well as claims for inverse condemnation, refund of illegally exacted fees, and breach of contract (if the

MMA were found to be enforceable). Plaintiff argued, *inter alia*, that the Town lacked authority under N.C. Gen. Stat. § 160A-372 (2019)[1] to require the off-site improvements as part of a by-right approval process for the Subdivision. Plaintiff further petitioned the trial court to issue a writ of mandamus directing the Town to take all necessary steps to issue COs and any other required developmental approvals for the Subdivision, and moved for attorneys' fees and costs. The Town filed its answer, generally denying the allegations of Plaintiff's complaint, on 8 April 2019.

¶ 7        On 14 February 2020, the Town moved for summary judgment. Plaintiff filed its own motion for summary judgment on 18 February 2020. On 24 February 2020, the motions for summary judgment came on for hearing in Iredell County Superior Court. On 10 August 2020, the trial court entered its order granting Plaintiff's motion for summary judgment, denying the Town's motion for summary judgment, granting Plaintiff's petition for a writ of mandamus, and reserving for later determination the financial issues such as attorneys' fees, costs, and reimbursement of expenditures.

¶ 8        On 4 September 2020, the Town filed its notice of appeal. That same day, the Town filed a motion to stay or enjoin execution or enforcement of the order and writ

---

[1] "Effective 19 June 2020, the General Assembly consolidated the provisions governing planning and development regulations by local governments into a new Chapter 160D of the General Statutes." *85' & Sunny, LLC v. Currituck Cty.*, 279 N.C. App. 1, 2021-NCCOA-422, ¶ 18 n.3, *disc. review denied*, ___ N.C. ___, 865 S.E.2d 858 (2021). As the former Chapter 160A was in effect at all times relevant to this appeal, we address that Chapter in this opinion.

of mandamus, pending its appeal. The Town's motion came on for hearing on 2 October 2020, at which hearing Plaintiff again raised the financial issues. The trial court requested supplemental briefing on the financial issues, which both parties filed in November 2020.

¶ 9 On 23 February 2021, the trial court entered an order granting in part and denying in part Plaintiff's motion for reimbursement of expenditures, determining that the Town "should return $101,500.00 plus 6% interest per annum" to Plaintiff pursuant to N.C. Gen. Stat. § 160A-363(e); however, the court determined that the remaining expenditures were "paid to other entities – not the Town – in the course of the development of the property and as part of the MMA" and thus those funds were "not recoverable pursuant to G.S. 160A-363(e)[.]" The trial court also granted Plaintiff's motion for attorneys' fees and costs. The trial court then concluded that "[b]ecause mandamus is the proper remedy in this case, Plaintiff's remaining claims that were not resolved" by the 10 August 2020 order "are moot." Accordingly, the trial court dismissed the remaining claims with prejudice.

¶ 10 On 24 February 2021, the Town filed its notice of appeal from the 23 February 2021 order. Plaintiff filed its notice of appeal from the same order on 8 March 2021.

### *Summary Judgment*

¶ 11 On appeal from the trial court's 10 August 2020 order granting Plaintiff's motion for summary judgment and denying the Town's motion for summary

judgment, the Town argues that the trial court erred by concluding that the Town did not have the authority to require off-site improvements as a condition for issuing development approvals for the Subdivision.

## A. Standard of Review

¶ 12        We conduct de novo review of a trial court's grant of summary judgment "because the trial court rules only on questions of law." *Buckland v. Town of Haw River*, 141 N.C. App. 460, 462, 541 S.E.2d 497, 499 (2000) (citation omitted). "A trial court may grant a motion for summary judgment where there is no genuine issue of material fact and where the movant is entitled to judgment as a matter of law." *Id.*; N.C. Gen. Stat. § 1A-1, Rule 56(c) (2021).

## B. Analysis

¶ 13        In its order granting Plaintiff's motion for summary judgment, the trial court relied on this Court's opinion in *Buckland* to support its conclusion that § 160A-372 "does not permit the Town to require [Plaintiff] to make off-site changes, in the manner in which it seeks, as a condition of the Town issuing development approvals." The Town argues that *Buckland* is both legally and factually inapposite, and therefore is not controlling authority in this case. We disagree.

¶ 14        In *Buckland*, the plaintiffs requested that the town approve a subdivision plat dividing their 7.6-acre property into 11 lots. 141 N.C. App. at 461, 541 S.E.2d at 499. The town approved the plaintiffs' subdivision plat "with the condition that [the]

plaintiffs 'adhere to the subdivision regulations regarding the improvement of the public right-of-way and unopened portion of Fairview and Hollar Streets,' specifically instructing [the] plaintiffs that its 'subdivision ordinance requires paving and curb and gutter.' " *Id.* The plaintiffs filed a complaint seeking, *inter alia*, a writ of mandamus directing the town to approve their subdivision request without restrictions, but the trial court granted the town's motion for summary judgment. *Id.* at 461–62, 541 S.E.2d at 499.

¶ 15        On appeal, this Court reviewed N.C. Gen. Stat. § 160A-372, the enabling legislation for city and town ordinances, which "grant[ed] municipalities certain powers they may include in a subdivision control ordinance." *Id.* at 463, 541 S.E.2d at 500. As it existed both when this Court decided *Buckland* and when the trial court granted Plaintiff's motion for summary judgment in the present case, § 160A-372(a) provided:

> A subdivision control ordinance may provide for the orderly growth and development of the city; for the coordination of transportation networks and utilities within proposed subdivisions with existing or planned streets and highways and with other public facilities; for the dedication or reservation of recreation areas serving residents of the immediate neighborhood within the subdivision or, alternatively, for provision of funds to be used to acquire recreation areas serving residents of the development or subdivision or more than one subdivision or development within the immediate area, and rights-of-way or easements for street and utility purposes including the dedication of rights-of-way pursuant to G.S. 136-66.10 or G.S. 136-66.11;

> and for the distribution of population and traffic in a manner that will avoid congestion and overcrowding and will create conditions that substantially promote public health, safety, and the general welfare.

N.C. Gen. Stat. § 160A-372(a).

Interpreting § 160A-372(a), this Court determined that "a municipality's subdivision ordinance may require a developer to consider existing or planned streets when it plats streets or highways *within* its subdivision, but the statute does not empower municipalities to require a developer to build streets or highways *outside* its subdivision." *Buckland*, 141 N.C. App. at 463, 541 S.E.2d at 500 (first emphasis added) (citation omitted). Because the trial court had "implicitly f[ound] as a matter of law that [the town] could compel [the] plaintiffs to construct access roads," this Court concluded that the trial court erred in granting the town's motion for summary judgment. *Id.* at 465, 541 S.E.2d at 501. Accordingly, the *Buckland* Court reversed and remanded to the trial court for the entry of an order granting summary judgment in favor of the plaintiffs. *Id.* at 467, 541 S.E.2d at 502.

In the present case, the Town argues that *Buckland* only interpreted the first clause of § 160A-372(a)—which it denominates the "Within Provision"—and that it was authorized to require the off-site improvements pursuant to the final clause of § 160A-372(a), which it denominates the "Traffic Provision." The Town maintains that *Buckland* is therefore legally inapposite to the present case, in that the *Buckland*

Court "only considered the scope of a town's authority to act under the Within Provision" but "did not consider whether [the town]'s ordinance was permissible under the Traffic Provision." However, the Town's argument is misguided. Ultimately, regardless of whether *Buckland* is viewed as interpreting the entirety of § 160A-372(a) or merely the Within Provision, the Town fails to identify any statutory authority permitting it to require off-site improvements as a condition of development approval or the issuance of COs under the circumstances presented.

¶ 18        The Town urges this Court to adopt a broad construction of § 160A-372. Specifically, the Town notes that its ordinance is consonant with § 160A-372's authorization that a town ordinance

> may provide that in lieu of required street construction, a developer may be required to provide funds that the city may use for the construction of roads to serve the occupants, residents, or invitees of the subdivision or development and these funds may be used for roads which serve more than one subdivision or development within the area.

N.C. Gen. Stat. § 160A-372(f). The Town argues that the "implication" of § 160A-372, "when viewed in the collective, is that a town can require a developer to account for increases in traffic attributable to a proposed development. And, in providing a town tools to fulfill this objective, [§ 160A-372] does not preclude a town from requiring off-site road improvements."

¶ 19        However, we are only at liberty to adopt a broad construction of § 160A-372 if

its language is ambiguous. "*If the enabling statute is ambiguous*, the legislation shall be broadly construed to include any additional and supplementary powers that are reasonably necessary or expedient to carry them into execution and effect." *Quality Built Homes Inc. v. Town of Carthage*, 369 N.C. 15, 19, 789 S.E.2d 454, 457 (2016) (emphasis added) (citation and internal quotation marks omitted); *accord* N.C. Gen. Stat. § 160A-4. Section 160A-4's "broad construction mandate . . . is a rule of statutory construction rather than a general directive, and, as such, *is inoperative when the enabling statute is clear and unambiguous on its face*[.]" *Quality Built Homes*, 369 N.C. at 19, 789 S.E.2d at 457 (emphasis added) (citation and internal quotation marks omitted).

¶ 20        The Town does not identify any such ambiguity in the plain text of § 160A-372; instead, the Town merely identifies what it would prefer that the statute provide. Section 160A-372 clearly does not authorize the Town to condition approval of the Subdivision or to withhold the issuance of COs on the completion of off-site improvements.

¶ 21        The plain text of § 160A-372 makes clear that our General Assembly has only authorized the Town to "require a developer to consider existing or planned streets when it plats streets or highways *within* its subdivision[.]" *Buckland*, 141 N.C. App. at 463, 541 S.E.2d at 500 (emphasis added). Alternatively, the Town "may require a developer to *provide funds* to be used to construct roads *both within and outside of* a

development. If the municipality selects this alternative, it undertakes to build these roads itself and [forgoes] the option of compelling the developer to build its own roads within the development." *Id.* at 464, 541 S.E.2d at 500–01 (emphases added) (citation omitted). But here, the Town pursued neither of these authorized courses of action, and thus lacked statutory authority to withhold development approvals for the Subdivision or condition such approvals on the completion of off-site improvements.

¶ 22        Lastly, the Town attempts to distinguish *Buckland* on its facts. While Plaintiff here sought approval of the development of the Subdivision with 467 lots on 209 acres, the developers in *Buckland* sought approval for only 11 lots on 7.6 acres. *Id.* at 461, 541 S.E.2d at 499. The Town also notes that *Buckland* makes no mention of a TIA or MMA, and asserts that the Town of Haw River "provided no justification for its pre-condition" in that case. Accordingly, the Town argues that "[t]hese distinctions . . . warrant a different outcome" in this case.

¶ 23        Yet the Town makes no argument as to *why* these distinctions warrant a different outcome. Nothing in *Buckland* purports to limit its holding that § 160A-372 "does not empower municipalities to require a developer to build streets or highways *outside* its subdivision" to cases involving developments of a certain size. *Id.* at 463, 541 S.E.2d at 500. The plain language of both the statute and *Buckland* presents a clear rule, regardless of the scale of the development at issue.

¶ 24        The trial court did not err in granting Plaintiff's motion for summary

judgment. Accordingly, the Town's argument is overruled, and the trial court's 10 August 2020 order is affirmed.

### *Attorneys' Fees*

On appeal from the trial court's 23 February 2021 order, the Town argues that the trial court erred by awarding attorneys' fees to Plaintiff. We disagree.

The trial court determined that "Plaintiff is entitled to recover reasonable attorneys' fees pursuant to G.S. 6-21.7." That statute provides, *inter alia*:

> In any action in which a city or county is a party, upon a finding by the court that the city or county violated a statute or case law setting forth unambiguous limits on its authority, the court shall award reasonable attorneys' fees and costs to the party who successfully challenged the city's or county's action.

N.C. Gen. Stat. § 6-21.7.

"It is well established that the word 'shall' is generally imperative or mandatory when used in our statutes." *Morningstar Marinas/Eaton Ferry, LLC v. Warren Cty.*, 368 N.C. 360, 365, 777 S.E.2d 733, 737 (2015) (citation and internal quotation marks omitted). Thus, § 6-21.7 provides for mandatory attorneys' fees through its use of the word "shall." When a trial court decides whether to award mandatory attorneys' fees, we review the trial court's decision de novo. *Willow Bend Homeowners Ass'n v. Robinson*, 192 N.C. App. 405, 418, 665 S.E.2d 570, 578 (2008).

The Town argues that the trial court erred in awarding attorneys' fees to

Plaintiff pursuant to § 6-21.7 because the limitations on the Town's authority pursuant to § 160A-372 and *Buckland* are not "unambiguous." For purposes of § 6-21.7, " 'unambiguous' means that the limits of authority are not reasonably susceptible to multiple constructions." N.C. Gen. Stat. § 6-21.7. In support of this argument, the Town again advances its claim, which we have already rejected, that *Buckland* does not control the outcome of this case because the Traffic Provision is a grant of authority that is legally distinct from the Within Provision.

¶ 29        As previously discussed, *Buckland* does not support the Town's claimed authority to act as it has in this case. Moreover, *Buckland*'s analysis is not ambiguous, and the Town's assertions to the contrary fail to persuade. Because the Town "violated a statute or case law setting forth unambiguous limits on its authority," *id.*, the trial court did not err in awarding attorneys' fees to Plaintiff. The Town's argument is overruled.

### *Recovery of Plaintiff's Expenditures*

¶ 30        On cross-appeal from the trial court's 23 February 2021 order, Plaintiff argues that it is entitled to recover "*all* money expended in relation to the illegal [o]ff-[s]ite [i]mprovements that the Town unlawfully imposed[.]" Alternatively, Plaintiff argues that it is entitled to recover the same money as "compensatory damages based on the alternative claims" that Plaintiff raised in its verified complaint.

**A.  Standard of Review**

¶ 31        In its 23 February 2021 order on the monetary issues remaining after entry of its 10 August 2020 order, the trial court granted in part and denied in part Plaintiff's motion for reimbursement of expenditures. Specifically, the trial court interpreted § 160A-363(e), which provided that "[i]f the city is found to have illegally exacted a tax, fee, or monetary contribution for development or a development permit not specifically authorized by law, the city shall return the tax, fee, or monetary contribution plus interest of six percent (6%) per annum." N.C. Gen. Stat. § 160A-363(e).

> Although the assessment of costs is generally within the discretion of the trial court, when the validity of an award of costs hinges upon the extent to which the trial court properly interpreted the applicable statutory provisions, the issue before the appellate court is one of statutory construction, which is subject to de novo review.

*Justus v. Rosner*, 371 N.C. 818, 829, 821 S.E.2d 765, 772 (2018) (citations and internal quotation marks omitted).

## B. Exaction

¶ 32        In its 23 February 2021 order, the trial court concluded that the Town "should return $101,500.00 plus 6% interest per annum to [Plaintiff] for reimbursement of fees paid to the Town" pursuant to N.C. Gen. Stat. § 160A-363(e). However, the trial court also determined that:

> The other funds paid by [Plaintiff] . . . were paid to other entities – not the Town – in the course of the development

of the property and as part of the MMA. Plaintiff elected to pay these funds. The funds were not "exacted" by the Town. As a result, the funds are not a "tax, fee, or monetary contribution" under § 160A-363(e) that the Town can return.

¶ 33        On cross-appeal, Plaintiff asserts that it is undisputed that its total expenditures in pursuit of the off-site improvements were $993,854.00 and argues that the trial court erred in not awarding it the full amount of its undisputed expenditure. Plaintiff contends that to be entitled to relief under § 160A-363(e), "the Town must have (a) acted illegally in order to; (b) exact a tax, fee, or monetary contribution (c) as a condition to development or a development permit." (Emphasis omitted). Plaintiff notes that "[t]he first element has already been determined, and the third is undisputed." The issue is thus whether the trial court erred in determining the extent to which the Town "illegally exacted a tax, fee, or monetary contribution[.]" N.C. Gen. Stat. § 160A-363(e).

¶ 34        "An exaction is a condition of development permission that requires a public facility or improvement to be provided at the developer's expense." *Franklin Rd. Props. v. City of Raleigh*, 94 N.C. App. 731, 736, 381 S.E.2d 487, 490 (1989) (citation omitted). This Court has identified the categories into which exactions most commonly fall, including "requirements that land be dedicated for street rights-of-way, parks, or utility easements and the like" and "requirements that improvements be constructed or installed on land so dedicated[.]" *Id.* (citation omitted).

¶ 35     Here, Plaintiff argues that the Town

> unlawfully required Plaintiff, as a condition of
> development, to expend its own funds—*i.e.*, to contribute
> monetarily—to obtain required right-of-way and
> easements from third parties, design and construct off-site
> improvements which [Plaintiff] itself had no use for and
> which provide [Plaintiff] no benefit outside of attempting
> to comport with the Town's illegal and coercive demands to
> obtain required necessary development approvals.

(Emphasis omitted). Accordingly, Plaintiff argues that the full amount of $993,854.00

was an "exaction" that it is entitled to recover under § 160A-363(e).

¶ 36     However, this definition alone does not resolve the issue before us. The trial

court determined that only $101,500.00 of Plaintiff's expenditures were paid directly

to the Town, and as such, those were the only funds "exacted" *by the Town*. The Town

notes in response to Plaintiff's cross-appeal that § 160A-363(e) uses the word "return"

and argues that, because the Town did not receive the remaining $892,354.00 of

Plaintiff's expenditures, it "cannot 'return' what it does not possess." Nevertheless,

Plaintiff contends that "the applicability of N.C.G.S. § 160A-363(e) is not dependent

upon the payee of the unlawfully exacted funds—it is irrelevant whether they were

required to be paid directly to the Town of Mooresville." (Emphasis omitted).

¶ 37     Neither party cites any case that directly addresses this issue in interpreting

§ 160A-363(e). However, we agree with the Town's interpretation of the text of § 160A-

363(e). Although the statute is silent as to whether the Town must be the recipient of

the funds to be returned, the Town cannot "return" that which it has not received. Thus, we affirm the trial court's conclusion of law that funds paid to entities other than the Town were not "exacted" by the Town. Plaintiff's argument is overruled.

¶ 38        However, Plaintiff also argues that the trial court erred in finding that the total sum of funds paid directly to the Town was $101,500.00. Plaintiff claims that it "is also entitled to recover the $155,679.00 paid in relation to the traffic engineering performed by Ramey Kemp," because that amount was "actually paid directly to the Town[.]"

¶ 39        Our careful review of the record suggests that the trial court arrived at its total of $101,500.00 paid to the Town from an affidavit provided by Plaintiff in support of its motion for summary judgment. That affidavit also lists $155,679.00 as the amount paid to Ramey Kemp. However, Plaintiff directs us to an exhibit in the record, composed of a letter from a transportation engineer for the Town, directing that Plaintiff "issue a check to the Town of Mooresville (memo: Stafford TIA)," and assuring Plaintiff that "[o]nce I have received the payment in full for the study and the executed letter, I will issue notice to proceed for the consultant to begin work on the TIA." Plaintiff also cites the deposition of the Town's engineering director, in which he states that the Town "had a policy in place that we -- the developer would -- so, basically the Town would pay for the services and the developer would reimburse that." The record thus suggests that Plaintiff may have paid more directly to the

Town than the trial court determined.

¶ 40    As such, even though we affirm the trial court's conclusion of law concerning the meaning of an exaction pursuant to § 160A-363(e), we nevertheless must reverse the 23 February 2021 order as regards its specific conclusion on the amount of total expenditures that the Town "exacted" from Plaintiff. On remand, the trial court shall conduct additional proceedings to determine precisely how much Plaintiff paid directly to the Town, and thus how much Plaintiff is entitled to recover from the Town, with interest, pursuant to § 160A-363(e).

## C. Mandamus

¶ 41    Lastly, Plaintiff argues that the trial court erred in concluding that Plaintiff's remaining claims were rendered moot by the issuance of a writ of mandamus, and by dismissing those remaining claims with prejudice. While Plaintiff agrees that the court's writ of mandamus was "vital" to its ability to obtain prospective relief, Plaintiff maintains that mandamus "alone does not make [it] whole" and "simply does not afford [it] complete relief for the damages [it] incurred . . . as a direct result of the Town's unlawful conduct." We disagree.

¶ 42    The writ of mandamus is "a limited and extraordinary remedy to provide a swift enforcement of a party's already established legal rights." *Holroyd v. Montgomery Cty.*, 167 N.C. App. 539, 543, 606 S.E.2d 353, 356 (2004), *disc. review and cert. denied*, 359 N.C. 631, 613 S.E.2d 690 (2005). "The function of a writ of

mandamus is to compel the performance of a ministerial duty—not to establish a legal right, but to enforce one which has been established." *Id.* at 543, 606 S.E.2d at 356–57 (citation omitted). The trial court "may only issue a writ of mandamus in the absence of an alternative, legally adequate remedy." *Graham Cty. Bd. of Elections v. Graham Cty. Bd. of Comm'rs*, 212 N.C. App. 313, 322, 712 S.E.2d 372, 379 (2011) (citation omitted).

¶ 43        In the present case, with the exception of the motion for litigation costs and attorneys' fees pursuant to N.C. Gen. Stat. §§ 1-263 and 6-21.7, every claim Plaintiff raised in its complaint was resolved by the issuance of the writ of mandamus. Plaintiff sought declaratory judgments on several issues relating to the Town's lack of authority to withhold development approvals, which were resolved by mandamus. Plaintiff also raised constitutional arguments regarding substantive and procedural due process, which the trial court determined were unnecessary to address as the "matter [wa]s resolved through statutory interpretation[.]" Lastly, Plaintiff raised several contractual claims, each of which aimed to relieve Plaintiff of its off-site improvement obligations under the MMA. Further, Plaintiff pleaded in its petition for a writ of mandamus that "[t]here is no alternative legally adequate remedy available to [Plaintiff] other than the issuance by this Court of a writ of *mandamus*, because State law and the Ordinances require lots within the Subdivision to have COs prior to occupancy of residences located thereon."

¶ 44        "A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy. Courts will not entertain or proceed with a cause merely to determine abstract propositions of law." *Roberts v. Madison Cty. Realtors Ass'n*, 344 N.C. 394, 398–99, 474 S.E.2d 783, 787 (1996) (citations and internal quotation marks omitted). Here, the trial court correctly determined that Plaintiff's claims, other than the motion for litigation costs and attorneys' fees, were rendered moot by the issuance of the writ of mandamus, in that each claim sought relief from the Town's requirement of off-site improvements as a condition of development approval. Because the issuance of the writ of mandamus provided the relief that Plaintiff sought, at that point, further determination of Plaintiff's remaining claims could not have any practical effect on the existing controversy. Thus, the trial court did not err in dismissing any remaining claims as moot, and Plaintiff's argument is overruled.

### *Conclusion*

¶ 45        For the reasons stated herein, we affirm the trial court's 10 August 2020 summary judgment order in its entirety. The 23 February 2021 order is affirmed, in part, as to the award of attorneys' fees to Plaintiff and the dismissal of Plaintiff's remaining claims as moot; reversed, in part, as to the amount of Plaintiff's expenditures that it may recover from the Town pursuant to N.C. Gen. Stat. § 160A-363(e); and remanded to the trial court for further proceedings to determine the sum

of Plaintiff's direct payments to the Town and to assess the amount of Plaintiff's recovery.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

Judges WOOD and GRIFFIN concur.